IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**JUAN JOSE HIDALGO**,

          **Petitioner,**

v.                                                    **Case No.: 1:18-cv-01540**

**WARDEN BARBARA RICKARD**
**FCI McDowell,**

          **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Juan Jose Hidalgo's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Motion to Dismiss, or in the Alternative to Transfer (ECF No. 8). This case is assigned to the Honorable David A. Faber, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the District Court **DENY** Petitioner's Petition for a Writ of Habeas Corpus; **GRANT** Respondent's request for dismissal; and **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

## I.    Relevant Facts

On April 9, 2008, a federal grand jury, sitting in the Western District of Texas, returned a Third Superseding Indictment charging Petitioner, Juan Jose Hidalgo

("Hidalgo"), as a participant in a sprawling 21-member conspiracy. *United States v. Hidalgo*, No. 3:07-cr-01624-PRM-17 (W.D. Tex. 2007) at ECF No. 584. The indictment alleged that Hidalgo knowingly conspired with other individuals to transfer monetary funds outside the United States with the intent to promote drug trafficking activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i)-(ii) and § 1956(h) ("Count Six"); knowingly conspired to intentionally possess and distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846, § 841(a)(1), and § 841(b)(1)(A)(ii) ("Count Ten"); and knowingly and intentionally possessed with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. , § 841(a)(1), and § 841(b)(1)(A)(ii) ("Count Eleven"). *Id.* at 4-5, 6-7. The United States had previously filed a Notice of Enhanced Penalty pursuant to 21 U.S.C. § 851, which provided that on February 24, 2000, in the 41st District Court of El Paso County, Texas, Hidalgo was convicted of the Unlawful Possession of Cocaine, in violation of HSC Section 481.115. *Id.* at ECF No. 368 at 1.

On July 28, 2008, following a 10-day jury trial, Hidalgo was convicted of all three Counts contained in the indictment. *Id.* at ECF Nos. 688, 691, 694, 695, 696, 740, 745, 748, 751, 753, 763. Hidalgo was sentenced on October 28, 2008, in the United States District Court for the Western District of Texas ("Sentencing Court"). *Id.* at ECF No. 844. The Sentencing Court began the sentencing hearing by noting that Counts Ten and Eleven were subject to a penalty enhancement, which set a mandatory minimum sentence of 20 years, and allowed a potential life sentence. *Id.* at ECF No. 897 at 4. The Sentencing Court next determined that the base offense level for the purposes of calculating Hidalgo's sentence range under the United States Sentencing Guidelines

("Guidelines") was 38, as provided by Counts Ten and Eleven. *Hidalgo*, No. 3:07-cr-01624-PRM-17 at ECF No. 897 at 5. Following arguments made by both parties, the Sentencing Court found that Hidalgo was subject to a two-point enhancement for his use of a "special skill" in furtherance of the drug conspiracy; specifically, that Hidalgo utilized his Commercial Driver's License qualification to assist the conspiracy in transporting large amounts of controlled substances. *Id.* at 17. The Sentencing Court determined that, given the two-point increase for the special skills enhancement, Hidalgo's base offense level was 40. *Id.* at 19. As Hidalgo was assigned a Criminal History Category of II, the Sentencing Court found that his Guidelines sentencing range was 20 years on Count Six, and between 324 and 405 months on Counts Ten and Eleven. *Id.*

The Sentencing Court held that a sentence of 324 months was excessive when compared to the sentences given to Hidalgo's co-conspirators, and, consequently, a downward variance from the suggested Guidelines range was warranted. *Id.* at 29-31. The Sentencing Court imposed a punishment of 240 months imprisonment for Count Six, 288 months in prison for Count Ten, and 288 months in prison for Count Eleven with all terms of imprisonment to run concurrently. *Hidalgo*, No. 3:07-cr-01624-PRM-17 at ECF No. 897 at 32. The Sentencing Court additionally assigned Hidalgo to a period of supervised release of three years on Count Six, and ten years on Counts Ten and Eleven, with the terms set to run concurrently. *Id.* The Sentencing Court explained that it believed "the sentence imposed is sufficient but not greater than required in light of all th[e] circumstances." *Id.* at 32-33.

Hidalgo filed a notice of appeal on November 5, 2008. *Id.* at ECF No. 856. On August 20, 2010 the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit")

3

denied Hidalgo's appeal, finding that the six claims he raised all lacked merit. *Hidalgo*, No. 3:07-cr-01624-PRM-17 at ECF No. 1076 at 5-10. The Supreme Court of the United States ("Supreme Court") denied Hidalgo's petition for a writ of certiorari on February 22, 2011. *Id.* at ECF No. 1107 at 2.

On July 13, 2012, Hidalgo submitted a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. *Id.* at ECF No. 1114. In the petition, Hidalgo argued his attorney provided ineffective assistance of counsel by failing to negotiate a beneficial plea deal, failing to effectively question a government witness, and failing to sever Hidalgo from his co-defendants. *Id.* at 4-6. Hidalgo additionally claimed his due process rights had been violated by an illegal detention made by law enforcement officials, and that he was the victim of racial profiling. *Id.* at 6-8. On July 18, 2012, the Sentencing Court denied Hidalgo's § 2255 petition, finding that it was barred by the statute of limitations and that, notwithstanding Hidalgo's argument to the contrary, Hidalgo was not entitled to equitable tolling. *Id.* at ECF No. 1115 at 4-5.

On April 1, 2013, Hidalgo filed a Motion Pursuant to Federal Rule of Civil Procedure 60(b), arguing that his § 2255 petition should be reopened because the Sentencing Court had inadvertently overlooked a valid basis for the petition to be declared timely; in particular, that the petition relied on two recent Supreme Court cases. *Id.* at ECF No. 1129 at 1-2. On May 1, 2013, the Sentencing Court dismissed Hidalgo's Rule 60(b) motion, finding that the Supreme Court opinions relied on by Hidalgo did not apply retroactively and consequently could not serve as a basis to render Hidalgo's § 2255 petition timely. *Id.* at ECF No. 1130 at 2.

4

On March 24, 2014, Hidalgo submitted a second Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. *Hidalgo*, No. 3:07-cr-01624-PRM-17 ECF No. 1172. In the motion, Hidalgo argued he was entitled to relief based on the Supreme Court decision in *Alleyne v. United States*, 570 U.S. 99 (2013) because, among other reasons, he was subjected to an increased mandatory minimum based on his prior conviction. *Id.* at ECF No. 1172 at 3. On March 31, 2014, the Sentencing Court dismissed Hidalgo's § 2255 petition without prejudice, holding that as the petition was successive, Hidalgo was required to first seek authorization from the Fifth Circuit before filing the petition in district court. *Id.* at ECF No. 1173 at 3-4.

On July 20, 2015, Hidalgo submitted a Motion to Reduce Sentence, arguing that he was entitled to a reduction under Amendment 782 to the sentencing Guidelines. *Id.* at ECF No. 1264 at 1. On March 22, 2016, the Sentencing Court issued an Order finding that, pursuant to the Guidelines amendment, Hidalgo was entitled to have his sentence reduced. *Id.* at ECF No. 1295 at 1. The Sentencing Court accordingly reduced Hidalgo's sentence on Counts Ten and Eleven from 288 months in prison to 262 months in prison. The sentence as to Count Six remained unchanged. *Id.* at 1-2.

On July 11, 2017, Hidalgo submitted a Motion for authorization to file a second or successive § 2255 petition in the Fifth Circuit. *In re: Juan Hidalgo,* Case No. 17-50590, Fifth Circuit Court of Appeals, Document No. 00514066761. Hidalgo argued that he was entitled to relief due to his "actual innocence" of the enhancement applied pursuant to 21 U.S.C. § 851 in light of recent Fifth Circuit and Supreme Court decisions. *Id.* at 5. Hidalgo asserted that his Texas state court conviction under § 481.115 no longer qualified as a predicate offense for the purposes of a § 851 enhancement following, among other decisions, the Fifth Circuit decisions in *United States v. Hinkle*, 832 F.3d

5

569 (5th Cir. 2016) and *Esquivel v. Lynch*, 803 F.3d 699 (5th Cir. 2015), and the Supreme Court decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). *Id.* at 5, 10, 13. On August 16, 2017, the Fifth Circuit denied Hidalgo's request for authorization, finding that none of the cases he relied upon established a new rule of law which was made retroactive to cases on collateral review. *Id.* at Document No. 00514118977 at 1.

On December 26, 2018, Hidalgo submitted the instant § 2241 petition. (ECF No. 1). In the petition, Hidalgo argues the Sentencing Court erred by enhancing his sentence pursuant to § 851 as it failed to properly apply the categorical approach in determining whether his state court conviction qualified as a predicate offense. (*Id.* at 2). Hidalgo believes that the decisions in *Mathis* and *Hinkle,* as well as *Descamps v. United States*, 570 U.S. 254 (2013), taken together establish that his prior conviction in Texas state court should not have been applied as a prior offense for the purposes of an enhancement under § 851. (*Id.* at 4-7).

Hidalgo states he would also "like to bring to the Court's attention" the Fifth Circuit decision in *Esquivel,* and requests that he be granted the "personal use exception" with respect to his prior conviction. (*Id.* at 8-9). Finally, Hidalgo asserts that the United States failed to comply with the mandated notice requirements prior to seeking an enhancement under § 851, and the Sentencing Court committed error by not enforcing the requisite notice requirements. (*Id.* at 9-12). Hidalgo requests that his sentence be vacated and remanded for resentencing without the application of the mandatory minimum penalty provided by § 851. (*Id.* at 12).

On March 7, 2019, Respondent submitted a Response to Order to Show Cause and Motion to Dismiss, or, in the Alternative, to Transfer. (ECF No. 8). Respondent argues that Hidalgo's motion—which challenges the validity of his conviction rather than

6

the execution of his sentence—should have been filed under § 2255, not § 2241. Respondent contends that as the petition does not meet the narrow exception permitting challenges to the validity of a conviction to be raised in a § 2241 petition, this Court lacks jurisdiction over Hidalgo's § 2255 motion and must either transfer it, or dismiss it outright. (*Id.* at 3-5). Respondent asserts that the petition should be dismissed, rather than transferred, because Hidalgo's claim is clearly meritless. (*Id.* at 8-10).

Hidalgo filed a Reply to Respondent's request for dismissal on April 8, 2019 in which he contests Respondent's conclusions. (ECF No. 12). Hidalgo argues that he is entitled to proceed under § 2241 because the decision in *Hinkle* has changed the law such that his sentence is now invalid. (*Id.* at 2-5). Hidalgo believes that his sentence is "fundamentally defective" because it is the product of a now erroneous mandatory minimum sentence. (*Id.* at 5). Hidalgo also asserts that the "career-offender determination" as provided by his Pre-Sentence Investigative Report ("PSR") is now invalid and asks this Court to resentence him "without the career offender enhancements." (*Id.* at 5-6).

On April 15, 2019, Hidalgo submitted a Motion in the Sentencing Court, requesting that his sentence be reduced and arguing that he was entitled to a sentence modification due to the recent enactment of the First Step Act ("FSA"). *Hidalgo*, No. 3:07-cr-01624-PRM-17 at ECF No. 1356 at 6. Hidalgo also discussed the Fifth Circuit decision in *Hinkle,* and indicated his belief that the use of his prior state court conviction as a predicate offense was now improper. *Id.* at 2-3. On June 24, 2019, the Sentencing Court dismissed Hidalgo's request for a sentence modification. *Id.* at ECF No. 1388. The Sentencing Court determined that Hidalgo was not eligible for a reduction under the various provision of the FSA because his offenses involved cocaine, and not crack

7

cocaine, and his sentence was imposed prior to the enactment of the FSA, making him ineligible for relief under the terms of the Act. *Id.* at 4, 6-8. The Sentencing Court explained that, while the FSA amended the applicable mandatory minimum for some defendants with prior drug convictions from 20 years to 15 years, Hidalgo was ineligible for this relief because his sentence was imposed prior to the FSA's enactment. *Id.* at 7-8. The Sentencing Court also noted that Hidalgo cited to *Hinkle* in his motion, but found he did not "explain how the case provides a basis to modify [his] sentence pursuant to the limited exceptions in 18 U.S.C. § 3582." *Id.* at 4 n.1.

On July 31, 2019, Hidalgo submitted a Supplemental Response in Opposition to Respondent's request that his § 2241 petition be dismissed. (ECF No. 13). In the response, Hidalgo argues that a recent decision by the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), *Hahn v. Moseley*, 931 F.3d 295 (4th Cir. 2019), supports his claim and requests that this Court take notice of it. (*Id.* at 1). Respondent addressed Hidalgo's supplement on August 30, 2019, arguing that the "case before this Court is easily differentiated from the ruling in *Hahn*." (ECF No. 15 at 1). Respondent contends that *Hahn* considered a statutory provision not at issue in the present case and did nothing to alter the settled legality of Hidalgo's sentence or convictions. (*Id.* at 2). Respondent further argues that Hidalgo's claim is still not cognizable under the savings clause, because Hidalgo attempts to challenge a "misapplied career offender enhancement," which is an error the Fourth Circuit has specifically ruled is not sufficiently grave to warrant the application of the savings clause. (*Id.* at 2-3).

## II.    <u>Discussion</u>

Despite the title he affixes to his petition, Hidalgo unequivocally challenges the validity of his conviction and sentence, and not the execution of his sentence. As such,

his filing is not a habeas petition under 28 U.S.C. § 2241; rather, it is a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. The law is well settled that § 2255 is the exclusive remedy for challenging the validity of a federal judgment and sentence. *See In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). A petition for a writ of habeas corpus under § 2241 is not an additional, alternative, or supplemental remedy to that prescribed under § 2255.

However, § 2255(e) provides a "savings clause" exception which serves as a means for petitioners to apply for a traditional writ of habeas corpus pursuant to § 2241. It states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255(e) (emphasis added). The savings clause will occasionally allow a § 2241 petition to take the place of a § 2255 motion, but not "merely ... because an individual is procedurally barred from filing a Section 2255 motion," *Vial*, 115 F.3d at 1194 n.5, nor simply because relief is unavailable due to the gatekeeping provisions of § 2255. *Young v. Conley*, 128 F.Supp.2d 354, 357 (S.D.W. Va. 2001). Instead, to trigger the savings clause in the context of a challenge to the validity of a conviction, the petitioner's claim must contain all three of the following characteristics: (1) at the time of his conviction, the settled law of the circuit or the Supreme Court established the legality of his conviction; (2) subsequent to his direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which he was convicted is now deemed not to be criminal; and (3) he cannot satisfy the gatekeeping provisions of § 2255 because

the new rule is not one of constitutional law. *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000). With respect to challenges involving the validity of a sentence, the savings clause is available only when the petitioner can establish that: (1) at the time of sentencing, settled law of the circuit or the Supreme Court established the legality of the sentence; (2) subsequent to his direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) he cannot satisfy the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). The Fourth Circuit held in *Wheeler* that the savings clause requirements are jurisdictional rather than procedural; therefore, if they are not met, the court does not have jurisdiction to entertain the § 2241 petition. *Id*. at 426. The petitioner bears the burden of establishing that a § 2255 motion is inadequate or ineffective and that he satisfies the savings clause requirements. *See Hood v. United States*, No. 01-6151, WL 648636, at *1 (4th Cir. 2001); *McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979); *Hayes v. Ziegler*, No. 5:11-cv-00261, 2014 WL 670850 (S.D.W. Va. Feb. 20, 2014), *aff'd*, 573 Fed.Appx. 268 (4th Cir. 2014).

### A. The Petition as a § 2241 Motion

### 1. Governing law

Hidalgo was convicted in the Western District of Texas which sits within the Fifth Circuit. As he is incarcerated within the jurisdiction of the Southern District of West Virginia, however, he filed the instant § 2241 petition in this Court. "[T]he substantive law relevant to a § 2241 petition is that of the circuit in which the petitioner was convicted." *Chaney v. O'Brien*, No. CIV.A. 7:07CV00121, 2007 WL 1189641, at *3 (W.D.

Va. Apr. 23, 2007), *aff'd*, 241 Fed. Appx. 977 (4th Cir. 2007). "Application of the law of the place of conviction is a consistent, reasonable rule, as is evidenced by the requirement that § 2255 motions be filed in the district of conviction." *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001). Moreover, applying the law of the court of confinement would result in the choice of law being based "on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the place of conviction." *Chaney,* No. CIV.A. 7:07CV00121, 2007 WL 1189641, at *3 (internal quotation omitted). This could result in inequitable outcomes such as co-defendants convicted of the exact same crimes receiving different relief based on the location of their confinement. *Id.* For these reasons, when analyzing a federal inmate's § 2241 petition, courts in this circuit apply the substantive law of the court of conviction when it differs from the substantive law of the reviewing court's circuit. *See Hahn*, 931 F.3d, at 301 ("In evaluating substantive claims under the savings clause ... we look to the substantive law of the circuit where a defendant was convicted.").

While the law of the court of conviction governs a prisoner's substantive § 2241 claims, Fourth Circuit procedural law continues to control the disposition of the petition. *Id.* Accordingly, the undersigned will consider Hidalgo's § 2241 petition under the substantive law of the Fifth Circuit, while applying the procedural law of the Fourth Circuit.

### 2. Hidalgo is not entitled to use the savings clause

#### i.) Ability to challenge guidelines error in habeas review

As an initial matter, Respondent argues that Hidalgo may not proceed because he is challenging the application of his advisory Guidelines range, and the Fourth Circuit has previously held that challenges of this nature are not susceptible to review under the

savings clause. (ECF No. 15 at 2-3). Hidalgo does at times assert that he is seeking to challenge the application of a "career offender" enhancement under the Guidelines. (ECF No. 12 at 5-6). At other times, however, Hidalgo frames his challenge as objecting to the application of the mandatory minimum sentence enhancement provided by § 851. (ECF No. 1 at 2).

Respondent is correct that the Fourth Circuit in *United States v. Foote*, 784 F.3d 931, 941 (4th Cir. 2015) held that the advisory nature of the Guidelines means that an error in their application does not result in a "fundamental defect or a complete miscarriage of justice" as required to utilize the savings clause. The Fourth Circuit later affirmed that the advisory nature of the Guidelines renders an error in their calculation to be a non-fundamental defect. *See Lester v. Flournoy,* 909 F.3d 708, 715 (4th Cir. 2018) *(*error in guidelines calculation was fundamental error where petitioner sentenced under pre-*Booker* mandatory guidelines, but "*Foote* undoubtedly would bar [the petitioner's] petition had he been sentenced under the advisory Guidelines."); *see also Kornegay v. Warden, FCI Butner,* 748 Fed. Appx. 513, 514 (4th Cir. 2019) (denying § 2241 petition because "[the petitioner] was sentenced under the advisory Guidelines and *Foote* bars his petition.") (unpublished).

While Hidalgo objects to his designation as a career-offender in the PSR, and asks that he be resentenced without the "career offender" enhancement, there is no indication in the record that Hidalgo ever received an enhancement for being a career offender. Hidalgo did receive a sentence enhancement under 21 U.S.C. § 851, and 21 U.S.C. § 841(b)(1)(A)(ii), however. The references to a career-offender enhancement, rather than an enhancement for a prior felony under § 851, therefore, appear to be made in error by Hidalgo. Nevertheless, to the extent that Hidalgo is indeed attempting to

challenge the Guidelines calculation employed by the Sentencing Court, the undersigned **FINDS** he is unable to do so via the savings clause.

### ii.) Esquivel does not apply to Hidalgo's case

While as discussed above, petitioners may not challenge *advisory* sentence enhancements made pursuant to Guidelines recommendations by using the savings clause, enhancements which increase either the mandatory minimum or maximum sentence are generally cognizable under § 2241. *See Lester*, 909 F.3d at 715. The application of an enhancement under § 851, at the time Hidalgo was sentenced, increased his applicable mandatory minimum sentence from 10 years to 20 years on Counts Ten and Eleven. *See* 21 U.S.C.A. § 841(b)(1)(A)(ii) (Westlaw through P.L. 116-56). Accordingly, Hidalgo's challenge to this enhancement is, at least preliminarily, subject to review under the savings clause.

Hidalgo attempts to challenge the validity of his sentence and, as such, must meet the savings clause requirements outlined in *Wheeler*. 886 F.3d at 429. To satisfy *Wheeler's* mandates, an inmate must show that there has been a retroactive change of law which renders the sentence now invalid. *Id.* Hidalgo states he would "like to bring to the Court's attention" the Fifth Circuit decision in *Esquivel*, and believes that the case establishes his right to relief based on the "personal use exception" with respect to his prior conviction. (ECF No. 1 at 8-9).

In *Esquivel,* the Fifth Circuit considered whether a petitioner's prior conviction for possession of marijuana rendered him removable under Section 237 of the Immigration and Nationality Act (INA). *See* 803 F.3d at 700-02. Section 237 of the INA provides that aliens are generally subject to deportation if they have received a conviction for a drug offense, but provides an exception for "a single offense involving

possession for one's own use of 30 grams or less of marijuana." *Id.* at 700 (quoting 8 U.S.C. § 1227(a)(2)(B)(i)). The Fifth Circuit in *Esquivel* determined that the Board of Immigration Appeal's interpretation of this "personal use exception" was too narrow and not supported by the text of the statute and accordingly remanded the removal decision for further review. *Id.* at 706.

Hidalgo's prior conviction for cocaine possession was not used to establish his eligibility for removal under the INA; rather, it was used to provide a sentence enhancement pursuant to 21 U.S.C. § 841(b)(1)(A)(ii) and 21 U.S.C. § 851. As the "personal use exception" discussion contained in *Esquivel* was tied to the specific statutory language provided by the INA, it is not relevant to Hidalgo's case and does not have the effect of retroactively invalidating Hidalgo's sentence—as required to utilize the savings clause. *See Wheeler*, 886 F.3d at 429. Accordingly, the undersigned **FINDS** that Hidalgo may not challenge his sentence via a § 2241 petition based on *Esquivel*.

*iii.) Failure to comply with § 851(b)*

Hidalgo argues that the Sentencing Court erred by not conducting a colloquy with respect to the § 851 information filed by the United States. (ECF No. 1 at 9). Section 851(b) provides that if the Government files an information seeking enhanced penalties for a drug offense on the basis of prior convictions:

> the court shall after conviction but before pronouncement of sentence inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

Section 851(c) provides further procedures that may be employed if a defendant seeks to challenge the validity of a prior conviction. *See* 21 U.S.C. § 851(c). Hidalgo's claim that the Sentencing Court failed to comply with the requirements of § 851(b) is not based on

14

a change in substantive law and certainly does not rely on newly applicable law. Thus, this claim could have been raised in Hidalgo's prior § 2255 motion or direct appeal. *See e.g. United States v. Majors*, 328 F.3d 791, 797 (5th Cir. 2003) (raising similar claim).

The savings clause is intended to provide an avenue of relief for federal inmates for whom the remedy provided by § 2255 is "inadequate or ineffective to test the legality" of their detention. 28 U.S.C. § 2255(e); *Swain v. Pressley*, 430 U.S. 372, 381 (1977). The remedy provided by § 2255 is not inadequate or ineffective, however, merely because claims which could have been raised in an initial § 2255 petition are now barred by the rules prohibiting successive or untimely petitions. *See Robinson v. Warden of Lee Cty. U.S.P.*, No. 7:19CV00205, 2019 WL 2067220, at *2 (W.D. Va. May 10, 2019) ("Rather, his arguments in the § 2241 petition fall squarely in the category of claims that he could have raised in his § 2255 motion. The fact that such claims would now be barred as successive or untimely filed if raised in a second § 2255 motion does not authorize [the petitioner] to raise them instead in a § 2241 petition through the narrow window of § 2255(e)."); *see also Farmer v. Ramirez*, 732 Fed. Appx. 222 (4th Cir. 2018) ("[Petitioner] has failed to satisfy his burden of demonstrating that 28 U.S.C. § 2255 is an inadequate or ineffective means of challenging the validity of his detention because his claim of sentencing error is not premised on a change in settled substantive law and could have been raised on direct appeal.") (unpublished).

Hidalgo refers to only one case during his discussion of this claim, *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010). (ECF No. 1 at 9-12). *Carachuri-Rosendo* does not support Hidalgo's position, however, because it fails to meet the requirement that the necessary change in law be "subsequent to [a petitioner's] direct appeal and first § 2255 motion." *See Wheeler*, 886 F.3d at 429. *Carachuri-Rosendo* was decided in 2010,

while Hidalgo's conviction did not become final until February 22, 2011, when the Supreme Court denied his petition for a writ of certiorari. *Hidalgo*, No. 3:07-cr-01624-PRM-17 at ECF No. 1107. Given that Hidalgo could have raised a claim based on *Carachuri-Rosendo* in his first § 2255 petition, he may not rely on the case now to establish his right to use the savings clause.

As Hidalgo's argument related to the Sentencing Court's alleged failure to follow the requirements of § 851(b) does not rely on new and retroactive law, it does not fall within the savings clause's narrow application. *See Jones v. Warden, FCI Allenwood*, No. 1:15-CV-13133, 2018 WL 4698493, at *6 (S.D.W. Va. Aug. 16, 2018), *report and recommendation adopted*, No. CV 1:15-13133, 2018 WL 4686442 (S.D.W. Va. Sept. 28, 2018) ("Petitioner is not relying on any retroactive change in the law, and the error he asserts could have, and should have, been raised in his direct appeal or his prior section 2255 motion."); *see also Peets v. Rickard*, No. 1:15-CV-14283, 2018 WL 3653785, at *3 (S.D.W. Va. June 11, 2018), *report and recommendation adopted*, No. CV 1:15-14283, 2018 WL 3650252 (S.D.W. Va. Aug. 1, 2018) ("The petitioner's claims were available to him at the time of sentencing and he should have raised them, if at all, either in a direct appeal or in a timely section 2255 motion."). Accordingly, the undersigned **FINDS** that this claim does not satisfy the requirements of the savings clause.

*iv.) Mathis, Descamps, and Hinkle do not apply retroactively*

Hidalgo's argument that the law has changed subsequent to his sentencing rests primarily on three cases: *Mathis, Descamps,* and *Hinkle*. (ECF No. 1 at 4-7). Hidalgo's reliance on *Mathis* and *Descamps* is misplaced given that courts in both the Fifth and Fourth circuits have overwhelmingly recognized that both *Mathis* and *Descamps* do not apply retroactively on collateral review, and thus do not allow a petitioner to employ the

16

savings clause or seek collateral relief. *See Hird v. Andrews*, 728 Fed. Appx. 217 n.1 (4th Cir. 2018) ("Specifically, the district court accurately observed that ... the Supreme Court's ruling in [*Mathis*] does not apply retroactively to cases on collateral review..."); *see also Lee v. Andrews,* No. 5:18-HC-2031-FL, 2018 WL 4924008, at *2 (E.D.N.C. Oct. 10, 2018) ("Here, petitioner cannot satisfy the second prong of the *Wheeler* test because *Mathis* is not a new rule of substantive law that is retroactively applicable on collateral review."); *Muhammad v. Wilson*, 715 Fed. Appx. 251, 252 (4th Cir. 2017) ("However, *Descamps* and *Mathis* did not announce a substantive change to the law. Rather, these cases reiterated and clarified when to apply the categorical approach or the modified categorical approach...") (unpublished); *United States v. Saunders*, No. 7:09CR00021-01, 2017 WL 1612542, at *3 (W.D. Va. Apr. 28, 2017) (holding that "*Mathis* did not announce a new rule of law" and recognizing "'courts applying *Mathis* have consistently reached the same conclusion.'") (quoting *United States v. Taylor,* 672 Fed. Appx. 860, 864 (10th Cir. 2016)); *In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016) (*Mathis* is not retroactively applicable to cases on collateral review because *Mathis* did not announce a new rule of constitutional law); *United States v. Morgan*, 845 F.3d 664, 666 (5th Cir. 2017) (holding *Descamps* did not announce a new rule of law); ( *Lockhart v. United States*, EP-17-CV-392-PRM, 2018 WL 3040584, at *7 (W.D. Tex., June 19, 2018) (collecting cases holding that "*Mathis* did not set forth a new rule of constitutional law that has been made retroactive to cases on collateral review.").

Considering that *Hinkle* was merely an extension of the principles discussed in *Descamps* and *Mathis,* courts in the Fifth Circuit have likewise recognized that *Hinkle* did not create a new rule of law cognizable on collateral review. *See Hernandez v. United States*, No. EP-02-CR-1114-PRM-1, 2017 WL 3075172, at *5 (W.D. Tex. July 19, 2017)

("Furthermore, *Hinkle* and *Tanksley* neither wrote new law, nor constituted retroactively applicable Supreme Court decisions."); *see also Ward v. United States,* No. 6:16CV1341, 2019 WL 1760078, at *2 (E.D. Tex. Apr. 21, 2019) (*Hinkle* does not apply retroactively); *United States v. Bermea*, No. 2:01-CR-15, 2017 WL 821787, at *2 (S.D. Tex. Mar. 2, 2017) (same). A court in the Fourth Circuit, having considered the question, reached the same conclusion. *Richards v. Kallis*, No. 5:17CV49, 2018 WL 3596043, at *1 (N.D.W. Va. July 26, 2018) ("The magistrate judge correctly noted that the cases on which petitioner relies, *Mathis* and *Hinkle*, do not meet this requirement because neither are retroactive.").

As these cases did not set forth a new rule of law which applies retroactively on collateral review, Hidalgo's contention that they allow him to proceed under the savings clause is incorrect. Accordingly, the undersigned **FINDS** that Hidalgo's claim that *Mathis*, *Descamps* and *Hinkle* invalidate the use of his prior conviction is not cognizable in a § 2241 petition, because it does not meet the second prong of the *Wheeler* test.

### v.) Hinkle and Mathis did not alter the legality of Hidalgo's sentence

Even assuming that *Hinkle* and *Mathis* were not inapplicable on collateral review, they would not permit Hidalgo to challenge his sentence via the savings clause because the decisions have not changed the legality of his sentence. Hidalgo was convicted in Count Eleven of knowingly and intentionally distributing and possessing five kilograms or more cocaine, and convicted in Count Ten of conspiring with others to commit that substantive crime. *Hidalgo*, No. 3:07-cr-01624-PRM-17 at ECF No. 584 at 6-7. A conviction under this statute ordinarily carries a mandatory minimum sentence of 10 years, and a maximum sentence of life in prison. *See* 21 U.S.C.A. § 841(b)(1)(A)(ii) (Westlaw through P.L. 116-56). However, at the time Hidalgo was sentenced, a

defendant who was found guilty of that offense after having obtained "a prior conviction for a felony drug offense," faced a mandatory minimum sentence of 20 years, with a maximum sentence of life in prison. *Id.* Hidalgo was subjected to such an enhancement due to a prior conviction under Texas Health and Safety Code Section 481.115 which makes it a crime to "knowingly or intentionally possess[] a controlled substance." Tex. Health & Safety Code Ann. § 481.115(a).

In *Mathis*, the Supreme Court considered whether a conviction under Iowa's burglary statute qualified as a predicate crime under the Armed Career Criminal Act ("ACCA"). The Supreme Court found that because the elements of Iowa's burglary statute were broader than those of generic burglary, Mathis's Iowa burglary convictions could not give rise to an ACCA sentence. Id. at 2257. In *Hinkle,* the case primarily relied upon by Hidalgo, the Fifth Circuit considered an argument raised by the defendant on appeal that a conviction under Section 481.112(a) of the Texas Health and Safety Code, did not meet the definition of a "controlled substance offense" contained in § 4B1.1(a) of the Guidelines. *See* 832 F.3d at 571. Section 4B1.1 of the Guidelines provides a "career offender" enhancement for those defendants who have the requisite number of qualifying prior convictions. See USSG § 4B1.1(a). One such qualifying predicate offense is a "controlled substance offense," which is defined in the Guidelines as being a conviction for an offense  that is punishable by more than one year in prison and "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense." USSG § 4B1.2(b).

The Fifth Circuit in *Hinkle* determined that § 481.112(a) of the Texas Health and Safety Act swept more broadly than the definition of a "controlled substance offense"

contained in the Guidelines as, under the Act, one could be convicted of merely "offering to sell" a controlled substance, while the Guidelines definition of what constituted a "controlled substance offense" was more narrow in scope and did not include mere offers to sell. *See Hinkle*, 832 F.3d at 572. Accordingly, the Fifth Circuit concluded that Section 481.112(a) could not serve as a predicate offense for the purposes of a career offender enhancement. *Id.* at 576.

Hidalgo was subjected to a sentence enhancement, but not under the career offender guidelines contained in USSG § 4B1.1(a); instead, he was sentenced using the statutory enhancement contained in § 841(b)(1)(A)(ii) of the Controlled Substances Act (CSA), and pursuant to the procedures outlined in 21 U.S.C. § 851. The CSA provides an enhancement if a defendant has been convicted of a prior "felony drug offense." The definition of what constitutes a felony drug offense is provided by Section 802(44) which states:

> The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

21 U.S.C.§ 802(44): *see also Burgess v. United States*, 553 U.S. 124, 129 (2008). This definition is much less restrictive than that at issue in *Hinkle,* as it applies to any offense that "prohibits or restricts conduct *relating* to" illegal drugs. 21 U.S.C.§ 802(44) (emphasis added). The Supreme Court has held that the "exclusive definition" of a "felony drug offense" is provided by § 802(44), and it requires only that the offense in question be punishable by more than one year in prison, and prohibit conduct related to controlled substances. *See Burgess*, 553 U.S. at 129–31.

Here, Hidalgo was convicted of possessing cocaine in violation of Texas Health and Safety Code § 481.115(a). *See Hidalgo*, No. 3:07-cr-01624-PRM-17 at ECF No. 368. Section 481.115 contains graduated penalty provisions based on the weight of the controlled substance at issue. The most lenient of these provisions is § 481.115(b), which states that possessing controlled substances in an amount less than one gram is a "state jail felony." Tex. Health & Safety Code Ann. § 481.115(b). Under Texas law, a state jail felony "shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days." Tex. Penal Code Ann. § 12.35(a). The actual sentence that Hidalgo received for this crime is irrelevant as a conviction qualifies as a "felony drug offense" as long as it authorized a potential sentence of more than one year. *See United States v. Kerr*, 737 F.3d 33, 39 (4th Cir. 2013); *see also United States v. Selvan-Cupil*, 603 Fed. Appx. 242, 248 (5th Cir. 2015) ("What matters for the felony determination is not the sentence imposed, but whether the defendant was eligible for a sentence exceeding a year.").

Hidalgo's conviction under Texas Health and Safety Code § 481.115 exposed him, at minimum, to a potential maximum sentence of over one year. Moreover, the conviction clearly was made under a law which prohibited conduct related to controlled substances. *See e.g. United States v. Curry,* 404 F.3d 316, 319 (5th Cir. 2005) (concluding that the definition of a felony drug offense as contained in § 802(44) "sweeps broadly enough to include even" simple possession convictions which do not require criminal intent). The conviction therefore qualified as a felony drug offense and Hidalgo was validly subjected to the mandatory minimum sentence enhancement as provided by § 851 and in § 841(b)(1)(A)(ii).

Hidalgo's argument that the line of cases culminating in *Hinkle* means that the enhancement is now invalid is simply incorrect. Those cases did nothing to disturb the application of the mandatory minimum enhancement in his case. *Hinkle* dealt with both a different statutory provision, Texas Health & Safety Code § 481.112(a), not Texas Health & Safety Code § 481.115(b), and considered the validity of a different enhancement mechanism, one provided by the Guidelines definition of a "controlled substance offense," not the application of an enhancement for a "felony drug offense" as defined by Section 802(44). *See Hinkle,* 832 F.3d at 572. *Mathis* likewise is not relevant as that case considered the application of a predicate offense under the ACCA using a "generic offense" analysis that is not presented by the statute which provided Hidalgo's enhancement. *See Mathis,* 136 S. Ct. at 2248. For this reason, district courts in the Fifth Circuit have consistently rejected similar challenges where petitioners argue the *Hinkle* and *Mathis* decisions retroactively invalidated their enhancement for a felony drug offense made pursuant to § 851. *See Washington v. Willis*, No. EP-17-CV-273-DCG, 2017 WL 4230556, at *5 (W.D. Tex. Sept. 22, 2017), *appeal dismissed*, No. 17-50959, 2018 WL 1989492 (5th Cir. Jan. 31, 2018) (the use of the petitioner's conviction under Texas Health & Safety Code § 481.115(b) for possession of cocaine as a qualifying felony drug offense was not disturbed by *Hinkle* or *Mathis*); *see also United States v. Hearn*, No. CR 07-50033-06, 2019 WL 3063533, at *2 (W.D. La. July 11, 2019) ("[The petitioner's] sentence was enhanced pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) and 851, not the ACCA and 18 U.S.C. § 924(e). The analysis set forth in *Mathis* and *Hinkle* simply does not apply to [the petitioner's] case."); *Collier v. United States*, No. 1:12CV376, 2017 WL 3879096, at *6 (E.D. Tex. July 13, 2017), *report and recommendation adopted*, No. 1:12-CV-376, 2017 WL 3903018 (E.D. Tex. Sept. 5, 2017) ("As the definition for 'felony drug offense'

set forth in Section 802(44) is the definition applicable to movant's case, and is different from the definition of "controlled substance offense" contained in § 4B1.1, movant's reliance on *Hinkle* is unavailing."); *Cardenas v. United States*, No. B:13-CR-171-1, 2018 WL 4599838, at *16 (S.D. Tex. May 7, 2018), *report and recommendation adopted*, No. 1:12-CR-00512, 2018 WL 3954154 (S.D. Tex. Aug. 17, 2018) (same).

Thus, contrary to Hidalgo's contention, he is not able to utilize the savings clause provision contained in § 2255(e) to challenge his sentence in a § 2241 petition, because the substantive law regarding the legality of his sentence has not changed. *Wheeler*, 886 F.3d at 429. Considering that Hidalgo's prior conviction for possession of cocaine under § 481.115(a) of the Texas Health and Safety Code still qualifies under Fifth Circuit law as a felony drug offense for the statutory enhancement provided by § 851 and § 841(b)(1)(A)(ii), the undersigned **FINDS** that this claim may not be brought via a § 2241 petition.

In summary, the undersigned has considered all of Hidalgo's claims and concluded they do not meet the requirements of the savings clause; therefore, the undersigned **FINDS** that Hidalgo is unable to attack the validity of his sentence using § 2241 and, consequently, this Court lacks jurisdiction to consider the motion.

### B. The Petition as a § 2255 Motion

Inasmuch as Hidalgo's claims are not properly brought under § 2241, his petition "must either be dismissed or construed as a section 2255 motion." *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000). If this Court chooses to dismiss Hidalgo's action, then he will be required to pursue his claim in the United States District Court for the Western District of Texas. Unlike § 2241 petitions, which are brought in the district where the petitioner is incarcerated at the time that he files his petition, *see United States v. Poole,*

531 F.3d 263, 264 (4th Cir. 2008), § 2255 directs the movant to "move the court which imposed the sentence" to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a).

The Court could construe Hidalgo's petition as a § 2255 motion and transfer it to the sentencing court; however, the undersigned **FINDS** no purpose in this exercise. Hidalgo's apparent lack of authorization from the Fifth Circuit to file a successive § 2255 motion, as required by § 2255(h) and 28 U.S.C. § 2244(b)(3)(A), eliminates any benefit to be gained from a transfer to the sentencing court. *See Harris v. Hogsten*, No. 1:13-11595, 2013 WL 6008496, at *2 (S.D.W. Va. Nov. 13, 2013); *Satcher v. Hogsten*, No. 1:13-0466, 2013 WL 5674856, at *2 (S.D.W. Va. Oct. 17, 2013); *see also United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) ("In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing abusive or repetitive claims.").

As an alternative, this Court may exercise its authority under 28 U.S.C. § 1631, recharacterize the petition as a motion for pre-filing authorization, and transfer it to the Fifth Circuit for consideration. Title 28 U.S.C. § 1631 provides as follows:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ... and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

Notably, the Fourth Circuit has declined to impose "a blanket policy of mandatory transfer of unauthorized successive petitions to th[e] court for consideration as [pre-filing authorization] motions;" instead, leaving district courts the discretion to determine whether the transfer of an unauthorized successive petition is "in the interest of justice." *Jones v. Braxton*, 392 F.3d 683, 691 (4th Cir. 2004). A district court may

dismiss, rather than transfer, a petition that is meritless or time-barred. *United States v. McNeill*, 523 Fed. Appx. 979, 984 (4th Cir. 2013) (citing *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir. 1999)) (stating that the transfer of a frivolous, time-barred case is a waste of judicial resources) and *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1001 (Fed. Cir. 1987) (declining to transfer claims under § 1631 that were frivolous). The Fifth Circuit has also recognized that "it is not in the interest of justice to transfer a meritless claim that will consume judicial time and resources." *See Mendez v. United States*, No. 7:15-CR-1367-1, 2017 WL 4221146, at *3 n.4 (S.D. Tex. Aug. 23, 2017), *report and recommendation adopted*, No. CR M-15-1367-1, 2017 WL 4180156 (S.D. Tex. Sept. 21, 2017) (citing *Chandler v. Commander, Army Fin. & Accounting Ctr.*, 863 F.2d 13, 15 (5th Cir.1989)).

For an appellate court to grant a Hidalgo's request to file a second or successive § 2255 motion, the motion must contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *see also Winestock,* 340 F.3d at 205. In considering whether a pre-filing authorization motion should be granted, the Fourth Circuit considers "whether the applicant made the requisite prima facie showing about a new rule of constitutional law," and whether the successive motion would be time-barred. *In re Vassell*, 751 F.3d 267, 270-71 (4th Cir. 2014). Here, "tak[ing] a peek at the merits" of Hidalgo's claim, it appears that a transfer is not warranted because Hidalgo does not satisfy the requirements of 28 U.S.C. § 2255(h). *Phillips*, 173 F.3d at 610.

*i.) Claims based on Hinkle, Mathis,* and *Esquivel*

The undersigned need not speculate as to how the bulk of Hidalgo's arguments would fare if transferred to the Fifth Circuit. The Fifth Circuit has previously considered and dismissed the claims Hidalgo attempts to raise. In July 2017, Hidalgo filed a Motion for authorization to file a second or successive § 2255 petition in the Fifth Circuit. *In re: Hidalgo,* Case No. 17-50590 at Document No. 00514066761. In the motion, Hidalgo argued that his Texas state court conviction under § 481.115 no longer qualified as a predicate offense for the purposes of § 851 following, the decisions in *Hinkle*, and *Mathis, Id.* at 5, 13. Hidalgo additionally argued he was eligible for the "personal use exception" established in *Esquivel*. *Id.* at 13. The Fifth Circuit denied these claims in August 2017. *Id.* at Document No. 00514118977. To transfer to the Fifth Circuit claims which it has already considered and rejected would be, without a doubt, a waste of judicial resources. Given that the Fifth Circuit has considered and refused Hidalgo's claim for relief based on the decisions in *Hinkle, Mathis,* and *Esquivel* the undersigned **FINDS** that transfer of a petition again based on these cases is frivolous and thus not warranted under § 1631.

*ii.) Claim based on Descamps*

While Hidalgo did not explicitly raise a claim based on the decision in *Descamps* in the Fifth Circuit, transferring the petition based on this case would be waste of judicial resources. As noted above, the Fifth Circuit has previously held that the decision in *Descamps* was not a new rule of law and, consequently, may not be used to raise a claim on collateral review. *See e.g. Morgan*, 845 F.3d at 666. Accordingly, the undersigned **FINDS** that transfer of Hidalgo's petition based on this case would be frivolous as the claim would be clearly barred by Fifth Circuit precedent.

*iii.) Failure to comply with § 851(b)*

The Fifth Circuit also has not directly considered Hidalgo's claim that the Sentencing Court failed to comply with the requirements of § 851(b). However, a transfer of the petition based on this claim would be plainly futile. This claim is unable to meet the requirements for successive § 2255 petitions because Hidalgo does not identify a "new rule" of constitutional law made retroactive by the Supreme Court as required by § 2255(h)(2). Hidalgo mentions only a single 2010 Supreme Court case during his discussion of this claim. (ECF No. 1 at 11-12). As noted above, Hidalgo could have raised a claim based on this precedent in his first § 2255 petition. Therefore, it was not "previously unavailable" as required by § 2255(h)(2). *See In re Robinson*, 917 F.3d 856, 862 (5th Cir. 2019) ("A petition is successive when it 'raises a claim … that was or could have been raised in an earlier petition…'") (quoting *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017)).

The undersigned has considered all of Hidalgo's claims and concluded that they do not meet the requirements for successive petitions contained in § 2255(h). Furthermore, Hidalgo does not argue he is subject to any equitable exception to the statutory barriers. Therefore, the undersigned **FINDS** that transfer of the petition pursuant to § 1631 would not be "in the interest of justice," *Jones*, 392 F.3d at 691, leaving dismissal as the only appropriate result.

## III.   <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED;** that Respondent's Motion to Dismiss, (ECF

No. 8), be **GRANTED;** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and counsel of record.

**FILED:**  September 19, 2019

Cheryl A. Eifert
United States Magistrate Judge

28